UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HEALTHSOUTH CORPORATION,          )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     3:06-0651
                                  )     Judge Echols
CRAIG O'NEIL, JEFFREY COOK,       )
GREGORY COOK, and ELITE           )
PHYSICAL THERAPY AND              )
ASSOCIATES, LLC, and ELITE        )
PHYSICAL THERAPY AND              )
REHABILITATION SERVICES, LLC,     )
                                  )
          Defendants.             )

<u>MEMORANDUM</u>

Pending before the Court is the Plaintiff HealthSouth Corporation's Motion for a Temporary Restraining Order and Preliminary Injunction (Docket Entry No. 4). Defendant Craig O'Neil has filed a memorandum in opposition (Docket Entry No. 17), as have Defendants Jeffrey Cook, Gregory Cook, Elite Physical Therapy and Associates, LLC and Elite Physical Therapy and Rehabilitation Services, LLC (Docket Entry No. 12). Oral arguments were heard on July 3, 2006.

**I.  FACTS**

The facts presently before the Court are untried and limited. They consist of the allegations in the Verified Complaint, declarations and affidavits filed by the parties, and the exhibits

1

introduced during the oral arguments on Plaintiff's request for a temporary restraining order.

This is a diversity action related to the provision of physical therapy services in Franklin, Tennessee. Plaintiff HealthSouth Corporation ("HealthSouth") provides services such as outpatient rehabilitation and physical therapy at locations nationwide, including at a facility located at 3310 Aspen Grove Drive, Franklin, Tennessee. Defendant Craig O'Neil ("O'Neil"), a physical therapist, was a HealthSouth Site Coordinator with day-to-day supervisory and managerial responsibility over the clinic. (Verified Complaint ¶¶ 2 & 7). He also served as a Regional Clinic Coordinator and in that capacity functioned as a liaison between HealthSouth and its Tennessee facilities, and had responsibility for developing referral relationships for HealthSouth in middle Tennessee. (Verified Complaint ¶ 9). After a decade of employment with HealthSouth, O'Neil resigned on May 11, 2006, with the stated intention to join another physical therapy practice.

Defendant Elite Physical Therapy and Rehabilitation Services, LLC is a Tennessee limited liability company which was formed in 2001 and which opened a physical therapy facility in Shelbyville, Tennessee that same year. In 2003, an additional physical therapy facility was opened in Spring Hill, Tennessee. (Def. Ex. 1). Elite Physical Therapy and Rehabilitation Services is owned by

Julie Shoemake and Kasey Cartwright. (Def. Exs. 1 & 2; Shoemake Decl. ¶ 2).

On May 4, 2006, Defendant Elite Physical Therapy and Associates, LLC, a Tennessee limited liability company, was formed. Among its members are those who founded Elite Physical Therapy and Rehabilitation Services, along with Defendants Jeffrey Cook and Gregory Cook (collectively "the Cooks") who are brothers and physicians. (Verified Complaint ¶ 3; Shoemake Decl. ¶ 2).

While bearing similar names and sharing some common members and the same address for their registered agents, Elite Physical Therapy and Rehabilitation Services, LLC and Elite Physical Therapy and Associates, LLC (collectively "Elite") are separate legal entities. (Def. Exs. 1-4). Nevertheless, Plaintiff asserts that Elite, through the Cooks, induced O'Neil to unfairly and unlawfully compete with HealthSouth in the Franklin market with the goal being to open an Elite physical therapy facility within one-half mile of HealthSouth's facility in Franklin. (Verified Complaint ¶ 3).[1] The primary basis for HealthSouth's contention is that O'Neil, on his own and at the behest of the Cooks, ignored his contractual obligations to HealthSouth.

During his employment with HealthSouth, O'Neil entered into an "EBITDA Agreement" ("Agreement") which contained a covenant not to

_____

[1]At oral argument, counsel informed the Court that Elite intended to open a facility in Franklin, Tennessee on July 10, 2006.

Case 3:06-cv-00651   Document 28   Filed 07/11/06   Page 3 of 22 PageID #: 320

compete and non-solicitation clause. In relevant part, the Agreement provides:

> a. General Restrictions. As additional consideration for the promises made by HEALTHSOUTH hereunder, the Employee agrees that at all times while Employee is employed by HEALTHSOUTH and during the one-year period immediately following termination of his/her employment with HEALTHSOUTH, . . . (i) he/she will not, directly or indirectly through one or more other associations, businesses, entities (including any corporation, limited liability company or partnership) firms or persons, own any interest in, become an officer, director, manager or employee of, or provide consulting or other services to, any association, business, entity, firm or person engaged, in whole or in part, in the development, management, operation or provision of Outpatient Orthopedic Physical Therapy . . . within a **10 mile radius of each Facility within Williamson County[ies],**[2] or make plans, or engage in preparations, to do any of the foregoing (including entering into any discussions or negotiations related thereto) without the prior written approval of HEALTHSOUTH, . . . ; and (ii) he/she will not, directly, or indirectly, hire, contract with or solicit for employment any employee [or] former employee (as that term is defined below] of HEALTHSOUTH or any of its affiliates or subsidiaries without the prior written approval of HEALTHSOUTH[.]

(Verified Complaint Ex. A at 6). In accordance with other provisions of the Agreement, O'Neil was paid certain bonuses, in addition to his base salary, as consideration for his agreement not to compete or solicit. (Verified Complaint ¶ 13).

HealthSouth claims that in January 2006, Elite began to interfere with its business at the Franklin facility and this initially manifested itself when the Cooks, who had been the

_____

[2]As typed, the restriction was for a 25 mile radius but that was stricken and the number "10" substituted in its place.

facility's largest source of patient referrals, began decreasing their referrals to HealthSouth. Upon inquiry by HealthSouth as to the reasons for the decrease, the Cooks allegedly stated a competitor of HealthSouth had wrongly informed them HealthSouth did not provide modality services (a form of physical therapy). (Verified Complaint ¶ 14). O'Neil later told HealthSouth employees that Elite had provided the Cooks with the misinformation. (Verified Complaint ¶ 15). Shortly thereafter, Elite and the Cooks reached an agreement to provide physical therapy in competition with HealthSouth. (Verified Complaint ¶ 16).

With the agreement in place, the Cooks allegedly solicited information from Carmen Smith ("Smith"), a sales and marketing representative of HealthSouth. Thinking the information was to be used by HealthSouth's valued customers (the Cooks) instead of a competitor, Smith offered insights into marketing, as well as information about key contacts in internal medicine and family medical practices. (Verified Complaint ¶ 18-19).

In early May 2006, and contrary to past practice, the Cooks began calling O'Neil at work two to three times a week. This aroused suspicion on behalf of some HealthSouth employees and O'Neil was confronted about the calls during the week of May 15, 2006. (Verified Complaint ¶ 25).

According to Plaintiff, O'Neil told the employees that he was going to work for Elite and that the Cooks were involved in the new

5

venture. O'Neil told the employees that Elite was prepared to make lateral offers to each of them and pay them the same salary and benefits they had at HealthSouth. O'Neil indicated that the "team" would remain together, only at Elite instead of at HealthSouth. As for the covenant not to compete, O'Neil told the employees that he would work for a year at a nearby facility operated by Elite and then transfer to the new Franklin facility. (Verified Complaint ¶ 27).

On May 22, 2006, Chandelle Bodziony ("Bodziony") sent a letter to one of the Cooks.[3] That letter was apparently in response to some contact from one of the Cook brothers because Bodziony noted that the Cooks were inquiring about the possibility of O'Neil joining their practice. Bodziony informed the recipient that O'Neil was under a one-year non-compete agreement (identifying the restriction as being a 15- as opposed to a 10-mile radius) and that O'Neil was prohibited from soliciting other HealthSouth employees from leaving their employment for a one-year period after O'Neil terminated his employment.[4] (Docket Entry No. 12, Ex. A).

On May 23, 2006, Jeffrey Cook held a meeting at HealthSouth's facility and told the employees that (1) Elite was setting up a

---

[3]The letter is addressed to "Dr. Cook" and no mention is made as to whether it was sent to Gregory or Jeffrey Cook.

[4]In the letter, Bodziony also wrote that HealthSouth might be willing to entertain a buy-out of O'Neil's non-compete agreement. Id.

competing business; (2) HealthSouth had failed to comply with its commitments to the Cooks; (3) Elite was already negotiating with HealthSouth to lease the exact same space in which HealthSouth was operating; and (4) HealthSouth would probably close the Franklin facility. According to Plaintiff, except for Elite entering into competition, all of Jeffrey Cook's statements were false. (Verified Complaint ¶ 29).

On June 1, 2006, the owners of Elite (including the Cooks) invited all of HealthSouth's employees to the Cooks' offices. Each employee of HealthSouth was given a formal written job offer from Elite. After that meeting, some of Elite's owners went to HealthSouth and toured its facility. During the tour, they made references to the changes that Elite would make after it took over the lease from HealthSouth. (Verified Complaint ¶¶ 31-32).

For his part, O'Neil denies the bulk of the allegations made by Plaintiff. He claims that in March 2006, Greg Cook asked him whether HealthSouth provided modality services and he assured them it did. (O'Neil Aff. ¶ 7). In late March 2006, Jeffrey Cook told O'Neil that he was interested in investing in a physical therapy business and asked O'Neil if he would be interested in coming to work for the new company. At first, O'Neil was equivocal and when Jeffrey Cook told him later that he was thinking of opening a facility in Franklin, O'Neil told Jeffrey Cook that he had a non-

7

compete which prohibited him from working within ten miles of his present facility for one year. (O'Neil Aff. ¶ 8).

In mid-April 2006, O'Neil spoke with his immediate supervisor, Bodziony, about the offer from Jeffrey Cook. Bodziony told O'Neil his services were valued by HealthSouth and that the company would increase his compensation but that O'Neil's responsibilities would grow and include significant travel. O'Neil decided not to accept the offer because of the travel requirements. (O'Neil Aff. ¶ 9).

Recognizing that O'Neil was under a non-compete agreement, Jeff Cook suggested that a position might be available at Elite's Spring Hill facility. (O'Neil Aff. ¶ 10). O'Neil decided to work at Elite's Spring Hill facility on May 10, 2006, and gave notice to Bodziony of this decision the next day. (O'Neil Aff. ¶ 11).

As for the information about his departure and efforts to solicit others to join him, O'Neil claims that during the week of May 15, 2006, he met each of the employees at HealthSouth individually and told them he had resigned his position and was planning on going to work at Elite in Spring Hill. He also told the employees that the Cook brothers were going to operate a physical therapy clinic in Franklin and that he hoped to join the Cooks at the facility when his non-compete agreement expired. Most of the employees asked about what would happen to their jobs and O'Neil told them he was not authorized to offer them jobs

8

elsewhere, but that Elite might extend offers to some of the HealthSouth employees. (O'Neil Aff. ¶ 12).

From June 15, 2006, until June 19, 2006, four of the five employees of HealthSouth tendered their resignations. Of the four, three admitted that they were leaving to join Elite. Some of those employees also indicated they would be working at Elite's new physical therapy facility in Franklin which Elite planned to open the first week of July 2006. That facility is within one mile of HealthSouth's Franklin facility. (Verified Complaint ¶ 33).

Based upon the events as HealthSouth perceives them, HealthSouth filed a six-count Verified Complaint. Those counts include claims for breach of contract (Count I); tortious interference with a contract (Count II); procurement of breach of contract (Count III); breach of fiduciary duty of loyalty (Count IV); aiding and abetting breach of fiduciary duty of loyalty (Count V); and tortious interference with business relationships (Count VI).

## II. <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 65(b), the Court may grant a temporary restraining order if it clearly appears from specific facts shown by testimony, affidavits or a verified complaint that immediate and irreparable injury, loss or damage will result to the applicant. In deciding whether to grant a temporary restraining order, the Court must consider four factors:

9

(1) whether the party seeking the order has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the order is not entered; (3) the potential harm the order would cause others; and (4) the public interest. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). Security can be required for the issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

### III.  **APPLICATION OF LAW**

The Court finds that HealthSouth is entitled to a temporary restraining order because HealthSouth has shown a substantial likelihood of success on the merits, it will likely suffer immediate and irreparable injury which outweighs the potential harm to the opposing party, and a temporary restraining order is in the public interest under the facts of this case.

### A. **Likelihood of Success on the Merits**

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." Six Clinics Holding Corp., II v. CAFCOMP Systems, 119 F.3d 393, 407 (6th Cir. 1997). "However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberate investigation." Id.

10

With regard to O'Neil, he was laboring under a covenant not to compete. "Covenants not to compete between an employer and employee are, as a general rule, valid and enforceable under Tennessee law . . . and will be enforced if they are reasonable under the circumstances," that is, "reasonable with respect to consideration as well as to geographic and time limitations." Corporate Express Office Prod. v. Warren, 2002 WL 1901902 *11 (W.D. Tenn. 2002)(collecting cases). Here, the covenant not to compete appears reasonable since the signing of the same allowed O'Neil to receive bonuses and the zone of non-competition is only ten miles.

Plaintiff has mustered evidence which suggests O'Neil endeavored to help Elite develop a new facility within a mile of his former place of employment and solicited employees and aided the Cooks in that solicitation by telling the employees they would be laterally hired and allowing the Cooks to enter HealthSouth's facility for purposes of solicitation. Such conduct is subject to restraint. Int'l Security Mgt. Group, Inc. v. Sawyer, 2006 WL 1638537 *11 (M.D. Tenn. 2006)(non-solicitation agreements are enforceable under Tennessee law, the violation of which may serve as a basis for temporary and preliminary injunctive relief); AmeriGas Propane, Inc. v. Crook, 844 F. Supp. 379, 386 (M.D. Tenn. 1993)("Employers may legitimately restrict future competition from their employees in order to protect the employer's goodwill and

11

relations with its customers that were developed on behalf of the employer by the employee").

With regard to the Cook and Elite Defendants, HealthSouth raises two arguments. First it asserts that it has shown a likelihood of success on the merits because the Tennessee Code places restrictions on physician-owned therapy businesses. Second, HealthSouth asserts that the Cooks (not only on their own behalf but also as owners of Elite) engaged in conduct which induced O'Neil and others to breach their duties to HealthSouth.

At this point, the Court cannot conclude that HealthSouth has shown a likelihood of success on the merits with regard to their first argument. While Tennessee recognizes that physician referrals to healthcare facilities in which they have an ownership interest can lead to conflicts of interest, a recent enactment of the legislature distinguishes between any health care facility and a physical therapy facility. Under the new legislation it appears that a physician can refer patients to a physical therapy facility in which he or she has an interest, so long as the physician informs the patient in writing of that interest and informs the patient that he or she may receive physical therapy at another facility and will not be treated any differently by the physician for doing so. Pub. Acts 2006, Chapter No. 875, Senate Bill No. 3841 amending T.C.A. §§ 63-13-312 & 63-6-602, effective June 5, 2006. Here, HealthSouth has presented no evidence which would

12

suggest that the Cooks or Elite would not comply with the requirements of the new legislation in relation to physician-owned healthcare facilities.

While the Court cannot find a strong likelihood of success on the merits with respect to HealthSouth's first argument regarding the Cooks and Elite, it has presented sufficient evidence that it has a strong likelihood of prevailing on its second argument. The Tennessee Code makes it "unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto[.]" T.C.A. § 47-50-109. In addition to the action created by statute, Tennessee's common law recognizes an action for inducement to breach a contract. "[T]he elements for both forms of the action are identical, except that a plaintiff asserting a common law action may recover punitive damages, instead of the treble damages mandated by statute." <u>Givens v. Mulliken ex rel. McElwaney</u>, 75 S.W.3d 383, 405 (Tenn. 2002).

Whether the claim is brought under the statute or common law, the elements are: "(1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the

13

plaintiff." Id. Improper inducement of a breach of contract is a
proper basis for preliminary injunctive relief. AmeriGas,
844 F.Supp.2d at 385.

In this case, Plaintiff has presented evidence which would
tend to establish those elements. It has shown a contract in the
form of O'Neil's covenant not to compete and non-solicitation
agreement. As for the Cooks' and Elite Defendants' knowledge of
that agreement, O'Neil states in his affidavit that in March 2006,
he told Jeffrey Cook that he had a non-compete agreement with
HealthSouth which prohibited him from working within 10 miles of
HealthSouth's Franklin facility. While O'Neil makes no mention of
telling Jeffrey Cook about the non-solicitation agreement, the
letter addressed to "Dr. Cook" from HealthSouth dated May 22, 2006,
informed the recipient that for a period of one year after leaving
employment, O'Neil was prohibited from soliciting other HealthSouth
employees to leave their employment. Notwithstanding that letter,
Plaintiff has presented evidence showing that on or about May 23,
2006, Jeffrey Cook went to HealthSouth's Franklin facility
allegedly to induce employees to leave and come to work for him.
Plaintiff has also presented evidence that a week later, on June 1,
2006, the Cook Defendants and the other two owners of Elite invited
all of the present HealthSouth employees to the Cooks' offices and
at that time, or shortly thereafter, extended them job offers.

14

As for the remaining elements, including inducement of breach, malice, and damages, HealthSouth has presented evidence to suggest that rather than opening a brand new facility in Franklin which could lawfully compete, Elite and the Cooks opted instead to misuse O'Neil's position at HealthSouth so that the Defendants could open what would be, in substance, HealthSouth's old facility under Elite's name, but staffed with the same persons as were employed by HealthSouth and deriving its business from the relationships that HealthSouth had built up over the years.

Given the present record, the Court concludes that Plaintiff has established a likelihood of success on the merits with respect to the allegation that the Cooks and Elite Defendants induced a breach of O'Neil's contract.

## B.  <u>Irreparable Harm</u>

"'As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm.'" <u>Performance Unlimited, Inc. v. Questar Publishers, Inc.</u>, 52 F.3d 1373, 1381 (6th Cir. 1995)(citation omitted). "However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." <u>Basicomputer Corp. v. Scott</u>, 973 F.2d 507, 511 (6th Cir. 1992).

Plaintiff has shown that if the Cooks or Elite are allowed to open the competing facility presently contemplated, it will suffer

15

harm to its business in the nature of loss of future profits and the goodwill it has already established with its patients. "Loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." Sawyer, 2006 WL 1638537 at *8. "Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to constitute irreparable harm to an employer." Id.; see also, Hoover Transp. Servs., Inc. v. Frye, 77 Fed. Appx. 776, 784 (6th Cir. 2003)(damages caused by loss of goodwill are difficult to calculate and make injunctive relief appropriate); Basicomputer Corp., 973 F.2d at 511 ("A loss of customer goodwill often amounts to irreparable injury"). Likewise, since future lost profits are hard to quantify, they too may serve as a basis for the allegation of irreparable harm. Warren v. City of Athens, 411 F.3d 697, 709 (6th Cir. 2005).

Accordingly, the Court finds that Plaintiff has established irreparable harm for purposes of a temporary restraining order.

**C.  Substantial Harm To Others**

The third factor the Court must consider is whether the issuance of a temporary restraining order will cause "substantial harm to others." Leary, 228 F.3d at 736. "This requires a court to balance the harm a plaintiff would suffer if its request for a [temporary restraining order] was denied with the harm the defendants would suffer if they were to be [temporarily] enjoined."

16

<u>Sawyer</u>, 2006 WL 1638537 at *8. "It also requires a court to assess the impact a preliminary injunction might have on relevant third parties." <u>Id</u>.

As indicated, the Court finds that HealthSouth will likely suffer irreparable injury if a temporary restraining order is not issued. The same cannot be said about the Defendants based upon the record as it presently exists before the Court.

O'Neil should not be harmed to the extent a restraining order merely prohibits him from working as a physical therapist for a company which has a business within ten miles of HealthSouth's Franklin facility. O'Neil states in his Affidavit he intends to go to work for Elite at its Spring Hill facility and remain there for a year. Additionally, during oral arguments, counsel for O'Neil indicated that O'Neil's concern was that he would not be able to earn a living and that he could abide by the ten-mile restriction contained in the covenant since he intended to work at Elite's facility in Spring Hill. Hence, a restraining order against O'Neil which complies with the terms of the Agreement he signed should present little concern that he will not be able to earn a living as a physical therapist while this case progresses.

The Cooks and Elite Defendants assert that they will suffer substantial harm if they are restrained from opening the anticipated Franklin facility because they "have hired physical therapist[s], leased space and otherwise committed themselves to

17

financial obligations[.]" (Docket Entry No. 12 at 3). However, these assertions are mere arguments of counsel and the Court has not been provided with any evidence on these matters. In any event, insofar as Defendants have committed themselves to certain financial obligations, any damages incurred as a result of not being able to fulfill those obligations should be calculable, or at least more calculable than the loss of good will and business that Plaintiff may suffer if a temporary restraining order is not issued.

The Court has no evidence before it as to the harm which might befall relevant third parties. It appears that such parties could include the patients presently being treated by HealthSouth. Since an Elite facility in Franklin is not presently operational, it would appear that prohibiting the Cooks or Elite from opening such a facility for a brief period of time would not harm those patients because they can continue to seek treatment at the facilities they presently patronize.

**D.    Public Interest**

The last factor in determining whether to grant a temporary restraining order "asks whether the public interest is advanced in issuing" the order. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 372 F.3d 712, 720 n. 4 (6th Cir. 2003). This has been described as a "somewhat nebulous" factor. Sawyer, 2006 WL 1638537 at * 8.

On the one hand, robust business competition serves the public interest if for no other reason than it may lead to a reduction in costs to the public. <u>Lexington-Fayette Urban County Gov't. v. BellSouth Telecommunications, Inc.</u>, 14 Fed. Appx. 636, 640 (6th Cir. 2001). On the other hand, "the public has an interest in discouraging unfair trade practices[.]" <u>Hoover</u>, 77 Fed. Appx. at *8. In the large scheme of things, it is difficult to perceive any real harm to the public if another physical therapy business in Franklin, Tennessee, does not open as scheduled while a temporary restraining order remains in effect.

**E.  <u>Scope of the Restraining Order</u>**

Based upon the foregoing, the Court finds that the four factors to be considered in ruling on a motion for a temporary restraining order are all in Plaintiff's favor. "The purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of the dispute may be had." <u>Procter & Gamble Co. v. Bankers Trust Co.</u>, 78 F.3d 219, 226 (6th Cir. 1996).

To preserve the status quo in this case, the Court finds HealthSouth is entitled to a temporary restraining order against O'Neil, although it will not be as all-encompassing as prayed for by HealthSouth. In its motion, HealthSouth seeks to "prohibit[] Defendant Craig O'Neil's employment with either Elite Physical Therapy and Associates, LLC or Elite Physical Therapy and Rehabilitation Services, LLC." The basis for the rather broad

19

restriction which would encompass not only the intended facility to be opened in Franklin, but also the facilities in Spring Hill and Shelbyville is unclear.  HealthSouth's underlying concern with O'Neil plying his trade elsewhere is that it would run afoul of his covenant not to compete.  By its very terms, however, that restriction is limited to a ten-mile radius of HealthSouth's Franklin facility.  Elite's facilities in Shelbyville and Spring Hill are more than ten miles from O'Neil's prior place of employment and HealthSouth has presented no evidence or any convincing arguments that the covenant can or should be extended farther than its literal terms.  Thus, O'Neil will not be prohibited from working for Elite at either its Spring Hill or Shelbyville facility.  Instead, he will be restrained from violating the Agreement he signed with HealthSouth regarding non-competition and non-solicitation.

The Court further finds that the status quo will be maintained by prohibiting the remaining Defendants from opening up a physical therapy business in Williamson County, Tennessee, which competes with HealthSouth's Franklin facility and by prohibiting any further solicitation of HealthSouth employees during the time frame of the temporary restraining order.

**F.  Security**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[n]o restraining order or preliminary injunction shall issue

20

except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "While . . . the language of Rule 65(c) appears to be mandatory, and . . . many circuits have so interpreted it, the rule in [the Sixth Circuit] has long been that the district court possesses discretion over whether to require the posting of security." Moltan Co. v. Eagle-Picher Indus. Inc., 55 F.3d 1171, 1176 (6th Cir. 1995).

In this case, the Court exercises its discretion by determining that security is appropriate to insure against any damages that Defendants may incur as a result of being unable to open an Elite facility in Franklin while a temporary restraining order is in effect. The security to be provided by Plaintiff shall be in the amount of $50,000.

## IV. CONCLUSION

On the basis of the foregoing, the Court will enter a temporary restraining order to maintain the status quo. That Order will require Defendant O'Neil to comply with the Agreement he signed, prohibit the remaining Defendants from opening a physical therapy clinic which competes with HealthSouth's Franklin facility

21

and prohibit any further solicitation of HealthSouth employees during the ten-day temporary restraining order period.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE